# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Kevin Wayne Anstead ) | |
| ) | Case No. 10-3094 |
| Debtor(s) ) | |
| ) | (Related Case: 09-38587) |
| Lyle Hoffman and Mark Hoffman, ) | |
| as Co-Administrators of the Estate ) | |
| of Robert Hoffman ) | |
| Plaintiff(s) ) | |
| v. ) | |
| Kevin Wayne Anstead ) | |
| Defendant(s) ) | |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability. For their complaint, the Plaintiffs rely on 11 U.S.C. § 523(a)(6) which excepts from discharge any debt arising as the result of a "willful and malicious" injury caused by the debtor. At the conclusion of the Trial, the Court took the matter under advisement so as to afford the opportunity to thoroughly consider the evidence submitted to the Court. The Court has now had this opportunity and, for the reasons set forth in this decision, finds that the debts in controversy are Nondischargeable.

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

## FACTS

The Plaintiffs in this matter, Lyle and Mark Hoffman, are the Co-Administrators of the Estate of Robert Hoffman who died intestate on October 12, 2008. The Plaintiffs are close family members of the Decedent, Robert Hoffman (hereinafter the "Decedent").

For a period of time prior to his death, the Decedent and the Defendant, Kevin Anstead, shared living accommodations. This living arrangement terminated approximately six months prior to the time of the Decedent's passing. Up until the time of his death, however, both the Decedent and the Defendant remained in close contact.

Immediately after the death of the Decedent, the relationship between the Plaintiffs and the Defendant became acrimonious. This condition arose because shortly after his death, the Defendant, claiming an ownership interest, began to remove various personal effects from the Decedent's property. Believing, however, that he did not have any legal interest in the Decedent's personal property, the Plaintiffs told the Defendant to cease removing any of the Decedent's property and to return any property already removed.

During their initial contacts, the Parties' interactions became heated. On one occasion, just days after his death, a law enforcement officer was called to the Decedent's residence to handle a dispute between the Parties. At this juncture, the law enforcement officer related to the Parties that their dispute was purely a civil matter and, that until their dispute was resolved, nobody should remove any property from the Decedent's residence. Shortly after the incident with the law enforcement officer, the Plaintiffs changed the entry locks on the Decedent's residence.

On October 29, 2008, the Decedent's estate was probated, with the Plaintiffs being appointed as administrators of the Decedent's estate. On November 4, 2008, the Plaintiffs also filed and were

Page 2

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

granted by the probate court a Motion for a temporary restraining order. The probate court's order provided that the Defendant was prohibited from entering the Decedent's property and from removing any personal property therefrom. On November 7, 2008, the temporary restraining order was converted by the court into a preliminary injunction.

In the probate action, the Plaintiffs also commenced a suit against the Defendant, asserting claims for conversion, unjust enrichment and concealment and embezzlement of estate assets. After a bench trial, judgment was entered in favor of the Plaintiffs on these claims. This judgment is for the sum of $7,499.00 and represents the value of the property the probate court found the Defendant to have converted from the Decedent's estate. A second judgment in favor of the Plaintiffs was thereafter entered by the probate court in the amount of $4,346.50. This second judgment was entered as a sanction against the Defendant for his frivolous conduct in the probate action.

## PROCEDURAL BACKGROUND

On December 15, 2009, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiffs then commenced the action now before the Court, seeking a determination that the two judgments entered in their favor against the Defendant constituted nondischargeable debts. For their action, the Plaintiffs relied primarily on § 523(a)(6) of the Bankruptcy Code which excepts from discharge any debt arising as the result of a "willful and malicious" injury caused by the debtor.

On their complaint to determine dischargeability, the Plaintiffs then filed a Motion for Summary Judgment. For their Motion for Summary Judgment, the Plaintiffs relied upon the doctrine of collateral estoppel, also known as issue preclusion, as the basis for a finding that the judgments entered against the Defendant were nondischargeable for purposes of § 523(a)(6). In a decision and order entered on this matter, the Court denied the Plaintiffs' Motion for Summary Judgment, finding

Page 3

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

that a genuine issue of fact existed with respect to one issue: Whether the Defendant acted with the specific intent to cause harm as is necessary to sustain an action under § 523(a)(6)? The Trial held on the Plaintiffs' complaint was limited to a determination of just this issue.

## DISCUSSION

Before this Court is the Plaintiffs' Complaint to Determine Dischargeability of Debt. Proceedings brought to determine the dischargeability of particular debts are deemed to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

The Plaintiffs' Complaint to determine dischargeability is brought pursuant to § 523(a)(6) of the Bankruptcy Code. In full, this provision provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

As with other exceptions to dischargeability, it is a plaintiff's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr. N.D.Ohio 1998). In an action brought under § 523(a)(6), this means demonstrating that the plaintiff's injury was caused by conduct on the part of the debtor that was both "willful" and "malicious." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr. N.D.Ohio 2003).

On the Plaintiffs' § 523(a)(6) action to determine dischargeability, the Court's role is not to retry those issues already adjudicated between the Parties in the probate action. The doctrine of *res*

Page 4

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

*judicata* – under which a determination made in a prior proceeding by a court of competent jurisdiction cannot be challenged in a subsequent proceeding – is a basic facet of American jurisprudence. 47 AM. JUR 2D Judgments § 463-465. As such, the judgments entered by the probate court are *res judicata* on the court's determination that the Defendant converted the Decedent's property. Resultantly, the judgments, including the award of damages set forth therein, are *res judicata* concerning a necessary element of § 523(a)(6): that the Plaintiffs show that they suffered an injury caused by the Defendant. *New Century Bank, N.A. v. Carmell*, 424 B.R. 401, 416 (Bankr. N.D.Ill. 2010).

On the issue of whether the Defendant caused injury to the Plaintiffs in a willful and malicious manner, however, this Court found the doctrine of *res judicata* to be inapplicable – hence the denial of the Plaintiffs' Motion for Summary Judgment – because, in rendering the two judgments against the Defendant in the probate action, the court did not "make any specific finding regarding the Debtor's state of mind." *In re Anstead*, 436 B.R. 497, 502 (Bankr. N.D.Ohio 2010). In more detail, this Court remarked:

> . . . the Plaintiffs' position falters on what is missing from the judgment. Particularly, at no point in its decision did the probate court make any specific finding regarding the Debtor's state of mind.
>
> Rather, the probate court only went so far as to find that the Debtor removed and then failed to return items belonging to the Hoffman estate. These findings, while relevant and possibly tending to show that the Debtor acted with an intent to cause harm, could also be indicative of simple forgetfulness or ignorance – clearly nonculpable states of mind. Accordingly, the findings of the probate court are not conclusive as to the specific intent requirement of . . . § 523(a)(6).

*Id*. In sum, this Court denied the Plaintiffs' Motion for Summary Judgment so as to afford the Defendant the opportunity to offer evidence – particularly, testimonial evidence – supporting a lack of any willful and malicious conduct on his part in converting the Plaintiffs' property.

Page 5

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

Neither the term "willful" nor "malicious" is defined by the Bankruptcy Code. But in the case of *Kawaauhau v. Geiger*, the Supreme Court of the United States addressed their scope. 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998). The issue before the Court in *Kawaauhau v. Geiger* was whether "§ 523(a)(6)'s compass cover acts, done intentionally, that cause injury, or only acts done with the actual intent to cause injury?" *Id.* at 61, 118 S.Ct. 974. (internal parentheticals omitted). Put differently, the Court in *Kawaauhau v. Geiger* was asked to decide whether the *mens rea* requirement of § 523(a)(6) looked only to the general intent of the debtor, or instead required a specific intent to cause harm.

In coming to a decision, the Court in *Kawaauhau v. Geiger* linked the mental state of § 523(a)(6) with that required of intentional torts, finding that § 523(a)(6) required a specific intent to cause injury. In the Court's words: "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'" *Id.* at 61-62, 118 S.Ct. 974.

At the Trial, the thrust of the Defendant's position, regarding a lack of any specific intent to harm the Plaintiffs, centered on his belief that he was the rightful owner of that property which the probate court found that he had converted. This belief, the Defendant explained, existed because during the time he lived with the Decedent, they shared and/or purchased property together. Thus, according to the Defendant, he was simply taking his property or property that the Decedent wanted him to have.

After listening to the Defendant's testimony at the Trial, the Court does not question the Defendant's subjective beliefs regarding the property he converted from the Plaintiffs. The Defendant, although emotional at the Trial, appeared sincere. However, the Defendant's subjective belief regarding ownership does not change a basic facet of this case: The evidence overwhelmingly

Page 6

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

shows that, from the onset, it was made clearly known to the Defendant that the Plaintiffs would contest his claim of ownership in any of the Decedent's property.

First, immediately after his death, a law enforcement officer was called to Decedent's residence to intercede in a dispute between the Parties concerning the disposition of the Decedent's property. At this time, the Defendant was plainly told to allow the judicial process to make a determination regarding the Parties' respective rights in the Decedent's property. Around this same time, the Plaintiffs also changed the entry locks on the Decedent's residence so as to prevent the Defendant's ingress. The gravity of the situation was finally reinforced when, less than one month after the Decedent's passing, the Plaintiffs obtained a restraining order prohibiting the Defendant from entering the Decedent's property and from removing any personal property therefrom.

It can, therefore, be unequivocally stated that the Defendant knew, at the time he was converting the Decedent's property, that there was a dispute as to the ownership of the property. Moreover, the Defendant could not have been under any illusions that, from the beginning, the Plaintiffs' claim of an interest in the Decedent's property was cognizable, with both of the Plaintiffs being close family members of the Decedent. In this way, the Court found the Defendant to be an astute person, with a basic understanding of the law.

Notwithstanding, the Defendant went forward with his actions and converted the Decedent's property. The Defendant also failed, thereafter, to account for the property he converted. It is this deliberate undertaking by the Defendant in converting the Plaintiffs' property which gives rise to the specific intent necessary to sustain a finding of a willful and malicious injury for purposes of § 523(a)(6).

In *Kawaauhau v. Geiger*, the Supreme Court held that not every tort judgment for conversion is exempt from discharge. 523 U.S. at 64, 118 S.Ct. at 978. Thus, it has been recognized that, since

Page 7

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

the Supreme Court's ruling in *Geiger*, a debt arising from conversion may be found to be dischargeable if it was incurred in the honest and good faith belief that authority to sell or use the property existed. *United States v. Dorman (In re Dorman)*, 98 B.R. 560, 569 (Bankr. D.Kan.1987). This has been labeled a technical conversion. *See, e.g., Auto Mart, Inc. v. Wendt (In re Wendt)*, 355 B.R. 769, 775 (Bankr. W.D.Mo.2006).

However, once a debtor has knowledge that their interest in property is subject to a legitimate dispute, any subsequent disposition of that interest, before the parties' rights in the property are determined, would not constitute an act of good faith. To hold otherwise, would stand to encourage the use of extrajudicial measures by debtors to handle disputes, a situation at odds with the goal of § 523(a)(6) which serves to encourage lawful behavior by excepting from a bankruptcy discharge any debt incurred by a debtor's morally reprehensible conduct. *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr.N.D.Ohio 2000).

In this case, therefore, since the Defendant at all times had full knowledge that his actions with respect to the Decedent's property could impinge on the Plaintiffs' rights, the Court is not faced with a technical conversion or the like. Nor, for this same reason, can the Court conclude that the Defendant acted in good faith. As such, the Defendant's conversion of the Plaintiff's property rises to the level so as to constitute a willful and malicious injury within the meaning of § 523(a)(6). As such, the two judgments entered against the Defendant are nondischargeable debts for purposes of bankruptcy law.

In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 8

Lyle Hoffman, et al. v. Kevin Wayne Anstead
Case No. 10-3094

Accordingly, it is

**ORDERED** that the two judgments entered by the Seneca County Court of Common Pleas, Probate Division, against the Defendant, Kevin Wayne Anstead, in favor of the Plaintiffs, Lyle Hoffman and Mark Hoffman, as Co-Administrators of the Estate of Robert Hoffman, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS for purposes of 11 U.S.C. § 523(a)(6).

Dated: January 12, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 12th day of January, 2011 to:

Timothy B. Pettorini
225 N. Market St.
P.O. Box 599
Wooster, OH 44691

Kevin Wayne Anstead
740 County Road 212
Lot 144
Fremont, OH 43420

Gregory E. Pawlowski
500 Madison Ave, #525
Toledo, OH 43604

                                              /s/Diana Hernandez
                                      Deputy Clerk, U.S. Bankruptcy Court